UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

DAGMAR BALL,

Plaintiff,

vs.

**ALLAN UNIVERSITY, DR. ERNEST MCNEALEY, CEASAR RICHBURG BISHOP JAMES DAVIS, SANDRA ANDERSON KEITH BRITTON, TAMARA CURRY, NORVEL GOFF, JUENARRAL KEITH, AND ALLEN W. PARROT (IN THEIR INDIVIDUAL CAPACITIES)**

Defendants.

C/A No: ____________________

Complaint

Plaintiff Dagmar Ball, by and through counsel, alleges as follows:

**Nature of the Action**

1. This is an action under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., the Family Medical Leave Act, and 42 U.S.C. § 1981, together with supplemental state-law claims arising from Allen University's decision to place Plaintiff on paid leave on April 17, 2025, and then not renew her employment effective July 1, 2025, after Plaintiff assisted Dr. Dub Taylor with financial-irregularity disclosures and institutional information later submitted to federal authorities.

2. Plaintiff was born in 1964, identified herself in her EEOC charge as age 61, and was over forty years old at all relevant times.

3. Plaintiff further alleges that Allen University's leadership retaliated against her because she was viewed as aligned with Dr. Taylor and the related disclosures, legal matters, and federal-authority contacts.

4. Plaintiff seeks back pay, front pay or reinstatement, lost benefits, liquidated damages on her ADEA claim, actual and punitive damages where allowed, attorney's fees, costs, and all other appropriate relief.

**Parties**

5. Plaintiff Dagmar Ball resides in Columbia, South Carolina.

6. Defendant Allen University is an employer located at 1530 Harden Street, Columbia, South Carolina 29204, employing 101 to 200 employees.

7. Defendant Ernest McNealey resides in Columbia, South Carolina, and at all relevant times he served as Allen University's President and an ex officio member of the Allen University Board of Trustees.

8. Defendant James Davis resides in South Carolina and, at all relevant times, served as Bishop of the Seventh Episcopal District and Chairman of the Allen University Board of Trustees.

9. Defendant Sandra Anderson resides in South Carolina and, at all relevant times, served as a member of the Allen University Board of Trustees.

10. Defendant Keith Britton resides in South Carolina and, at all relevant times, served as Vice President of the Allen University Board of Trustees.

11. Defendant Tamara Curry resides in South Carolina and, at all relevant times, served as a member of the Allen University Board of Trustees.

12. Defendant Norvel Goff resides in South Carolina and, at all relevant times, served as a member of the Allen University Board of Trustees.

13. Defendant Juenarrl Keith resides in South Carolina, and at all relevant times served as a member of the Allen University Board of Trustees.

14. Defendant Allen W. Parrott resides in South Carolina and, at all relevant times, served as a member of the Allen University Board of Trustees and as a former Vice Chair of the Board.

15. Defendant Ceasar Richburg resides in South Carolina, and, at all relevant times served as a member of the Allen University Development Committee as Chairman.

**Jurisdiction and Venue**

16. This Court has subject-matter jurisdiction over Plaintiff's federal claim under 28 U.S.C. § 1331.

17. This Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367.

18. Venue is proper in this District under 28 U.S.C. § 1391 because Allen University is located in Columbia, South Carolina, and the events giving rise to this action occurred in Columbia, South Carolina.

**Administrative Exhaustion**

19. Plaintiff signed and filed a Charge of Discrimination presented to the EEOC and the South Carolina Human Affairs Commission on April 20, 2026, naming Allen University and checking age and retaliation.

20. In that charge, Plaintiff alleged age discrimination and retaliation arising from her April 17, 2025 leave and June 2025 non-renewal.

21. The EEOC issued a Dismissal and Notice of Rights on May 18, 2026, for Charge No. 436-2026-00820.

22. This action is filed within 90 days of Plaintiff's receipt of the EEOC Notice of Right to Sue.

**Factual Allegations**

23. Plaintiff worked for Allen University as an Administrative Executive Assistant for the Vice President of Institutional Advancement from October 20, 2020, until June 30, 2025.

24. Plaintiff performed at an above-standard level.

25. Plaintiff also received approximately five raises based on her performance, that her last raise came in July 2024, and that Allen University awarded her the Top Hat Award on August 8, 2023.

26. In fact, President Ernest McNealey described her as the "highest paid Administrative Support at Allen University" or the "highest paid Administrative Assistant on staff."

27. Plaintiff stated that, beginning in October 2024, she assisted Dr. Taylor in finding irregularities in Allen University's finances.

28. On or around 2024, Plaintiff reported Ceasar Richburg for creating and attempting to pass bad checks to the University for a number of years.

29. In late 2024 and early 2025, Dr. Taylor engaged in disclosures to the Board of Trustees and cooperation with external compliance matters, and Federal Authorities and that Plaintiff

assisted in compiling and providing institutional information in the ordinary course of her duties that was later submitted to federal authorities.

30. Plaintiff's assistance included concerted disclosure to Dr. Dug Taylor regarding the misuse and misappropriation of millions of dollars of funds. This misappropriation occurred in October 2024.

31. Plaintiff's charge further states that her role placed her in close executive proximity and gave her access to relevant records.

32. Plaintiff also stated that Dr. Taylor informed Human Resources that he had been interviewed by the FBI and that Plaintiff had helped him put the materials together.

33. When Dr. Taylor met with the FBI in January 2025, Plaintiff assisted him in preparing a report for federal investigators. This infuriated Defendants and led to the actions further detailed below.

34. In fact, Ms. Ball accompanied Dr. Dug Taylor in multiple meetings with Human Resources and Federal Authorities in his reports of retaliation, misappropriation of funds and on the job misuse of funds.

35. A related Allen University complaint alleges that Dr. Taylor served as Vice President of Institutional Development through April 2025, that the Board requested truthful information from him, that the Board voted on October 4, 2024 to hear directly from him, and that he then provided information to the Board concerning the University's finances and the 50+1 agreement.

36. Plaintiff alleges that Allen University's leadership knew that Dr. Taylor had made internal disclosures and that Plaintiff worked closely with him on the matters he was raising.

37. On April 17, 2025, Human Resources Officer Mrs. Dennis placed Plaintiff on administrative leave with pay, and this action followed the firing of Dr. Taylor the same day.

38. Plaintiff also stated that the leave decision was made by President Ernest McNealey and that she was called into Human Resources within approximately thirty minutes after Dr. Taylor was fired.

39. Allen University's leave letter stated that Plaintiff was being placed on temporary leave with pay effective immediately, that the leave was not disciplinary in nature, and that it did not imply any assumption of misconduct or wrongdoing by Plaintiff. This was both pretextual and false as Defendants jointly exercised a plan to retaliate against Plaintiff and deprive her of her job.

40. That letter also barred Plaintiff from accessing university premises and systems or engaging in work-related activities unless specifically authorized.

41. Plaintiff stated that she was not given a reason for the leave other than a vague statement that it was procedure and not related to her performance.

42. Allen University later sent Plaintiff a June 13, 2025 letter stating that her employment agreement would not be renewed as of July 1, 2025, that her last paycheck would be on June 30, 2025, and that her insurance benefits would terminate then.

43. Plaintiff stated that she sent an email requesting FMLA leave for surgery on June 16, 2025 and later received the non-renewal letter around June 28, 2025.

44. Plaintiff's charge states that the administration, specifically President McNealey, saw her as a participant in the legal matters and wanted to replace her with a younger worker at a lower rate of pay.

45. A related Allen University complaint alleges that McNealey, Davis, Anderson, Britton, Curry, Goff, Keith, Parrott, and others collectively constituted a controlling majority of the Board of Trustees and exercised effective control over Allen University's governance.

46. Plaintiff alleges that the timing of her leave and non-renewal, together with her work for Dr. Taylor, the Board-related disclosures, the federal-authority contacts, her performance history, and the stated interest in a younger lower-paid replacement, support claims for age discrimination, FMLA retaliation, and retaliatory termination.

**First Cause of Action (Against all Defendants)**
**Age Discrimination in Violation of the ADEA**

47. Plaintiff realleges paragraphs 1 through 42 as if fully set forth herein.

48. Plaintiff was over forty years old at all relevant times.

49. Allen University was Plaintiff's employer.

50. Plaintiff was qualified for her position and was performing at an above-standard level.

51. Allen University took adverse employment actions against Plaintiff by placing her on paid leave on April 17, 2025, and then ending her employment through non-renewal effective July 1, 2025.

52. Allen University's leave letter expressly stated that Plaintiff's leave was not disciplinary and did not imply wrongdoing by Plaintiff.

53. Plaintiff alleges that Allen University discriminated against her because of age.

54. The circumstances supporting that allegation include Plaintiff's strong performance history, multiple raises, August 2023 award, the President's description of Plaintiff as the highest-paid administrative support employee, and statements that the administration wanted to replace her with a younger worker at a lower rate of pay.

55. Allen University's conduct was willful.

56. As a direct and proximate result of Allen University's unlawful conduct, Plaintiff has suffered lost wages, lost benefits, and other damages recoverable under the ADEA.

**Second Cause of Action (Against all Defendants)**
**Retaliatory Termination in Violation of South Carolina Public Policy**

57. Plaintiff realleges paragraphs 1 through 55 as if fully set forth herein.

58. Plaintiff's charge states that she assisted Dr. Taylor in compiling and providing institutional information that was later submitted to federal authorities and that she helped put together materials after Dr. Taylor was interviewed by the FBI.

59. Plaintiff's charge also states that the administration saw her as a participant in the related legal matters.

60. Plaintiff alleges that Allen University placed her on leave and then ended her employment because of her assistance with disclosures, compliance-related matters, and law-enforcement-related cooperation.

61. Plaintiff alleges that terminating an employee for assisting in exposing suspected financial irregularities and for helping prepare information for federal authorities violates South Carolina public policy.

62. This count is pleaded in the alternative to the extent South Carolina law permits it on the facts developed in discovery.

63. As a direct and proximate result of Allen University's conduct, Plaintiff has suffered damages.

**Third Cause of Action (Against Individual Defendants)**
**Civil Conspiracy**

64. Plaintiff realleges paragraphs 1 through 62 as if fully set forth herein.

65. McNealey, Davis, Anderson, Britton, Curry, Goff, Keith, and Parrott held leadership or Board positions connected to Allen University during the relevant period.

66. Plaintiff's evidence file shows that, before Plaintiff's leave and termination, Dr. Taylor sent retaliation-related communications to Bishop Davis and copied Parrott, Britton, Goff, Anderson, Curry, and others concerning McNealey's alleged retaliation and hostile work environment.

67. In fact, Curry commissioned and required Dr. Taylor and Plaintiff investigate McNealey's past affairs at his previous place of employment.

68. Plaintiff alleges that McNealey and the individual defendants agreed, combined, or acted in concert to isolate Plaintiff, remove her from access to University systems, and cause her non-renewal because of her association with Dr. Taylor and the underlying disclosures and investigations.

69. Overt acts in furtherance of that conspiracy included Plaintiff's immediate paid leave, the restriction on her access to University premises and systems, and the subsequent non-renewal of her employment.

70. Plaintiff has suffered actual and compensatory damages as a result.

**Fourth Cause of Action (Against All Defendants)**
**Interference and Retaliation in Violation of the Family and Medical Leave Act**

71. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

72. At all relevant times, Defendant Allen University was an employer covered by the Family and Medical Leave Act because it employed more than fifty employees.

73. At all relevant times, Plaintiff was an eligible employee under the FMLA because she had been employed by Allen University from October 20, 2020 through June 30, 2025, and had worked at least 1,250 hours during the twelve-month period preceding her request for leave.

74. Plaintiff suffered from a serious health condition requiring surgery, which made her unable to perform one or more essential functions of her position and entitled her to protected medical leave under the FMLA.

75. On or about June 16, 2025, Plaintiff notified Allen University that she needed FMLA leave for surgery.

76. Plaintiff was not required to use any particular words or expressly invoke the FMLA so long as she provided sufficient information for Allen University to understand that the requested leave may have been FMLA-qualifying. 29 C.F.R. § 825.301; 29 C.F.R. § 825.302.

77. Once Allen University received Plaintiff's request for medical leave, it was required to determine whether the leave was potentially FMLA-qualifying, provide the required eligibility and rights-and-responsibilities notices, and designate qualifying leave as FMLA leave. 29 C.F.R. § 825.300 [6]; 29 C.F.R. § 825.301.

78. Allen University failed to provide Plaintiff the required FMLA notices, failed to approve or designate her leave, failed to request any needed certification, and failed to otherwise respond to her FMLA request.

79. Allen University then ended Plaintiff's employment effective June 30, 2025, and terminated her insurance benefits as of that date.

80. Allen University's failure to respond to Plaintiff's FMLA request, failure to designate her leave, and decision to end her employment interfered with, restrained, and denied Plaintiff's exercise or attempted exercise of rights protected by the FMLA.

81. Allen University also used Plaintiff's request for FMLA leave as a negative factor in the decision to end her employment and terminate her benefits.

82. The FMLA prohibits an employer from interfering with, restraining, or denying the exercise or attempted exercise of FMLA rights, and also prohibits an employer from discriminating or retaliating against an employee for exercising or attempting to exercise FMLA rights. 29 C.F.R. § 825.220.

83. As a direct and proximate result of Allen University's FMLA violations, Plaintiff suffered lost wages, lost employment benefits, loss of health insurance, out-of-pocket losses, emotional and financial hardship, and other damages recoverable by law.

84. Plaintiff is entitled to recover wages, employment benefits, other compensation lost by reason of the violation, actual monetary losses caused by the violation, interest, liquidated damages, equitable relief, attorney's fees, expert witness fees, and costs. 29 C.F.R. § 825.400.

85. Allen University's violations were willful because it knew or showed reckless disregard for whether its conduct violated the FMLA.

86. Plaintiff therefore seeks all remedies available under the FMLA, including back pay, lost benefits, front pay or reinstatement, liquidated damages, interest, attorney's fees, costs, and such other relief as the Court deems just and proper.

**Fifth Cause of Action**
**Breach of Contract**
**Against Defendant Allen University**

87. Plaintiff realleges all preceding paragraphs as if fully set forth herein.

88. Plaintiff and Defendant Allen University were parties to an employment agreement governing Plaintiff's employment, compensation, duties, benefits, and/or renewal rights.

89. Allen University's June 13, 2025, letter expressly acknowledged Plaintiff's employment agreement and stated that the agreement would not be renewed as of July 1, 2025.

90. Plaintiff performed all conditions, covenants, and obligations required of her under the employment agreement, except to the extent performance was prevented, excused, or waived by Allen University.

91. Plaintiff was employed by Allen University from October 20, 2020, through June 30, 2025, and she received approximately five raises based on her performance.

92. Plaintiff also received Allen University's Top Hat Award on August 8, 2023, in recognition of her support and research for the Office of the President.

93. The employment agreement, together with applicable Allen University policies, procedures, and incorporated employment documents, required Allen University to comply with the terms governing renewal/non-renewal, discipline, administrative leave, notice, benefits, and termination or separation procedures.

94. Allen University breached the employment agreement by placing Plaintiff on administrative leave on April 17, 2025, restricting her access to University premises and systems, and then refusing to renew her employment without following the contractual and policy-based procedures applicable to Plaintiff's employment.

95. Allen University's April 17, 2025, leave letter stated that Plaintiff's paid suspension was not disciplinary and did not imply misconduct or wrongdoing by Plaintiff.

96. Allen University further breached the employment agreement by ending Plaintiff's employment effective June 30, 2025, terminating her insurance benefits, and refusing to provide the compensation, benefits, procedures, and protections owed under the agreement.

97. Allen University's June 13, 2025, letter stated that Plaintiff's last paycheck would be June 30, 2025, and that her insurance benefits would terminate then.

98. As a direct and proximate result of Allen University's breaches, Plaintiff suffered lost wages, lost benefits, loss of insurance coverage, consequential damages, and other damages recoverable by law.

**Additional Cause of Action**
**Breach of Contract Accompanied by a Fraudulent Act**
**Against Defendant Allen University**

99. Plaintiff realleges all preceding paragraphs as if fully set forth herein.

100. This claim is pleaded in the alternative and in addition to Plaintiff's ordinary breach-of-contract claim. Allen University breached Plaintiff's employment agreement as set forth above.

101. Allen University's breach was accompanied by fraudulent intent because Allen University, acting through its officers, agents, and decisionmakers, used the April 17, 2025 administrative leave and the June 2025 non-renewal process to conceal the true reasons for Plaintiff's removal.

102. Plaintiff assisted Dr. Dub Taylor in identifying financial irregularities and that information she compiled was later submitted to federal authorities.

103. Plaintiff states that Dr. Taylor had been interviewed by the FBI and that Plaintiff helped him put materials together.

104. Plaintiff further states that Allen University placed her on administrative leave on April 17, 2025, after Dr. Taylor was fired, and that she was not given a reason other than a vague statement that the action was "procedure."

105. Allen University's April 17, 2025, letter represented that Plaintiff's paid suspension was not disciplinary and did not imply wrongdoing by Plaintiff.

106. Plaintiff alleges that this representation was materially misleading because Allen University had already decided, or was in the process of deciding, to remove Plaintiff because of her association with Dr. Taylor, her assistance with financial-irregularity disclosures, her perceived cooperation with federal authorities, and her status as an older, higher-paid employee.

107. Allen University's fraudulent acts included:

a) representing that the suspension was merely temporary and non-disciplinary;
b) concealing the true retaliatory and discriminatory reasons for Plaintiff's removal;
c) refusing to provide Plaintiff a truthful explanation for the leave and non-renewal;
d) using the non-renewal process as a pretext to avoid honoring Plaintiff's contractual employment rights; and
e) terminating Plaintiff's pay and insurance benefits effective June 30, 2025.

108. The fraudulent acts accompanying the breach were committed by Allen University through President Ernest McNealey, Human Resources personnel, and other officers, agents, or decisionmakers whose identities will be confirmed in discovery.

109. Plaintiff alleges that the fraudulent acts were made with the intent to deceive Plaintiff, conceal Allen University's true motive, and deprive Plaintiff of the benefit of her employment agreement.

110. Plaintiff reasonably relied on Allen University's representations that the leave was temporary, non-disciplinary, and not based on wrongdoing, and she was thereby deprived of a fair opportunity to contest the true basis for the adverse employment action before her employment and benefits were terminated.

111. As a direct and proximate result of Allen University's breach of contract accompanied by fraudulent acts, Plaintiff suffered actual damages, consequential damages, lost wages, lost benefits, loss of insurance coverage, and other damages recoverable by law.

112. Plaintiff is entitled to punitive damages because Allen University's breach was accompanied by fraudulent intent and fraudulent acts.

**Sixth Cause of Action (Against All Defendants)**
**Race Discrimination in Violation of 42 U.S.C. § 1981**

113. Plaintiff realleges the preceding paragraphs as if fully set forth herein.

114. Plaintiff is white. Upon information and belief, the individual Defendants identified herein are Black.

115. Plaintiff had a contractual employment relationship with Allen University, including the employment agreement described in the Fifth Cause of Action, which is a contract within the meaning of 42 U.S.C. § 1981.

116. Allen University and the individual Defendants took adverse action against Plaintiff by placing her on administrative leave on April 17, 2025, restricting her access to University systems and premises, and non-renewing her employment effective July 1, 2025.

117. Plaintiff alleges, upon information and belief, that race was a motivating factor in Defendants' decisions to place her on leave and to non-renew her employment.

118. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, and other damages recoverable under 42 U.S.C. § 1981, including compensatory and, where permitted, punitive damages.

**Prayer for Relief**

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendants, and grant the following relief:

A. Declare that Allen University violated the ADEA;

B. Award Plaintiff back pay, lost benefits, prejudgment interest, and all other make-whole relief available by law;

C. Award Plaintiff reinstatement or, in lieu of reinstatement, front pay;

D. Award liquidated damages on the ADEA claim;

E. Declare that Allen University violated the FMLA; award Plaintiff lost wages, lost benefits, actual monetary losses, interest, liquidated damages, equitable relief, attorney's fees, expert witness fees, and costs under the FMLA.

G. Award Plaintiff actual and consequential damages for breach of contract;"

"H. Award Plaintiff punitive damages for breach of contract accompanied by a fraudulent act;"

"I. Award Plaintiff all contractual, equitable, and legal remedies available under South Carolina law."

J. Award actual, consequential, and punitive damages on the state-law claims as permitted by law;

K. Award Plaintiff her reasonable attorney's fees and costs where recoverable;

L. Declare that Defendants violated 42 U.S.C. § 1981, and award Plaintiff compensatory and punitive damages thereunder;

M. Award such other and further relief as the Court deems just and proper.

**Jury Demand**

Plaintiff demands a trial by jury on all issues so triable.

RESPECTFULLY BY:
s/Aaron V. Wallace
Aaron V. Wallace (11469)
Wallace Law Firm
1416 LAUREL STREET, STE B
Columbia, SC 29210
PH 803-766-3997
Fax:839-218-5786

August 15, 2026